1   LAWRENCE G. TOWNSEND, ESQ. (S.B.N. 88184)
    LINDA JOY KATTWINKEL, ESQ. (S.B.N. 164283)
2   OWEN, WICKERSHAM & ERICKSON, P.C.
    455 Market Street, Suite 1910
3   San Francisco, CA  94105
    Telephone: 415-882-3200
4   Telecopier: 415-882-3232
    ltownsend@owe.com
5   ljk@owe.com

6   Attorneys for Plaintiff,
    Leaf Lines LLC
7

8                   UNITED STATES DISTRICT COURT

9          IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  LEAF LINES LLC, a California Company,        Civil Action No.

12                  Plaintiff,

13          vs.                                  COMPLAINT FOR INJUNCTIVE RELIEF
                                                 AND DAMAGES FOR:
14  MICHAEL D. SAGE and SUSAN                    (1)   Federal Copyright Infringement;
    GILMOUR SAGE, Washington state              (2)   Federal Unfair Competition;
15  residents dba SAGE DESIGNS, and DOES         (3)   Unfair Competition Under California
    1- 100,                                            Law
16                                               (4)   Breach of Contract Under California
                    Defendants.                        Law;
17  _____/         (5)   Breach of Fiduciary Duty Under
                                                       California Law;
18                                               (6)   Misrepresentation Under the DMCA;
                                                       and
19                                               (7)   Declaratory Relief.

20                                               Demand for Jury Trial

21          Plaintiff Leaf Lines LLC for its complaint against Defendants Michael D. Sage and Susan

22  Gilmour Sage dba Sage Designs, and Does 1-100, alleges as follows:

23                          **NATURE OF THE ACTION**

24          1.  This is an action to redress violations of the federal copyright laws, 17 U.S.C.

25  § 501, et seq., federal laws of unfair competition, 15 U.S.C. §1125(a) et seq., as amended,

26  California state law of unfair competition, Cal. Bus. & Prof. Code § 17200 et seq., breach of

27  contract under California law, breach of fiduciary duty under California law, misrepresentation

28



COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR FEDERAL COPYRIGHT INFRINGEMENT, ETC.

FILED
AUG - 6 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

C 07 4015 PVT

1  under the federal Digital Millennium Copyright Act, 17 U.S.C. § 512(f), and declaratory relief

2  under 28 U.S.C. § 2201, as the result of willful and unauthorized use by Defendants of Plaintiff's

3  copyrighted expression and trade dress, and willful misrepresentations regarding Plaintiff's

4  copyrighted expression, trade dress and business, as more fully set forth hereinafter.   Plaintiff

5  seeks injunctive relief restraining infringement by Defendants of Plaintiff's copyrights and trade

6  dress, damages as the direct and proximate result thereof, and related relief.

7                                   **THE PARTIES**

8           2.  Plaintiff Leaf Lines LLC, is a company organized and existing under the laws of the

9  state of California, with its principal place of business located at 1166 Independence Avenue,

10 Mountain View, California 94043.

11          3.  Upon information and belief, Defendants Michael D. Sage and Susan Gilmour Sage

12 are husband and wife doing business as Sage Designs, with a principal place of business at 5008

13 NE 20th Avenue, Vancouver, WA 98663.

14          4.  Plaintiff does not know the true names of the individuals, corporations, partnerships

15 or other entities sued and identified herein as Does 1 through 100.  Plaintiff alleges that said

16 Defendants are liable to Plaintiff under the claims for relief set forth below, and requests leave of

17 this Court to amend this Complaint when the true names of said Defendants are discovered.

18                           **JURISDICTION AND VENUE**

19          5.  This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to

20 28 U.S.C. §§ 1331 and 1338.  This court has supplemental jurisdiction over Plaintiff's claims

21 pursuant to 28 U.S.C. § 1367.

22          6.  Venue in the Northern District of California is proper pursuant to 28 U.S.C.§

23 1391(b), § 1392 and § 1400(a).

24                          **INTRADISTRICT ASSIGNMENT**

25          7.  Intradistrict assignment to the San Jose Division is appropriate under Civil Local Rule

26 3-2(d) because Plaintiff is located in Santa Clara County, and because acts comprising the

27 copyright infringement and unfair competition occurred in Santa Clara County and San

28

1   Francisco, with the harm from such wrongful acts occurring in Santa Clara County where

2   Plaintiff is located, and the contract that is the subject of the supplemental claims was entered

3   into in Santa Clara county.

**ALLEGATIONS COMMON TO ALL COUNTS**

**A.    Plaintiff's Intellectual Property**

6      8.   Plaintiff Leaf Lines manufactures and sells fine arts and crafts products at wholesale

7   throughout the United States. Plaintiff's success is due to the distinctive expression that

8   characterizes the unique works featuring etched leaves. In 1993, Plaintiff's principal and founder

9   Booker Morey developed a proprietary process for a leaf-etching process for creating

10  "skeletonized" or "etched" leaves.  Plaintiff has kept this process confidential. Plaintiff has

11  carefully protected the process against unnecessary disclosure even to Leaf Lines employees and

12  close business associates, and has required everyone authorized to utilize or know about the

13  process to sign nondisclosure agreements.

14     9.   In 1993, Mr. Morey developed a distinctive design for shadowbox artworks which

15  feature three-dimensional collages of etched leaves created through Plaintiff's process. The

16  collages feature etched leaves of the same species, in particular colors, mounted on particular

17  backgrounds in small shadowboxes (referred to by their inside dimensions: 5" x 7", 8" x 10", and

18  11" x 14") comprised of particular matting materials and frames (the "Leaf Lines Small

19  Shadowbox Designs").

20     10.  Since 1993, Plaintiff has created and sold  thousands of products comprising the

21  Leaf Lines Small Shadowbox Designs.  Leaf Lines owns ten (10) U.S. Copyright Registrations

22  which protect the Leaf Lines Small Shadowbox Designs as set forth in Exhibit A.

23     11.  Since 1993, Plaintiff has extensively promoted the Leaf Lines Small Shadowbox

24  Designs to U.S. customers through the distribution of over 600 Leaf Lines samples and

25  descriptive literature to candidate galleries in the United States; Leaf Lines has sent over 700

26  directed postcard advertisements featuring the Leaf Lines Small Shadowbox Designs to very

27  select galleries, and has advertised the Leaf Lines Small Shadowbox Designs extensively in

28

1  printed advertisements in important trade magazines and buyers' guides; Leaf Lines has

2  participated in a number of national wholesale shows including the San Francisco International

3  Gift Fair, the New York International Gift Fair, and the Buyers Market of American Craft in

4  Philadelphia, all of which featured Leaf Lines Small Shadowbox Designs as its signature

5  products; Leaf Lines Small Shadowbox Designs products are included on a website owned by

6  WholesaleCrafts.com, as well as Leaf Lines' own webiste <www.leaflines.com> which is

7  directed to gallery owners. A large catalog of Leaf Lines products which feature the Leaf Lines

8  Small Shadowbox Designs on CD-Rom has been sent to at least 250 interested galleries to date.

9      12.  Plaintiff also promotes its Leaf Lines products through purchased "adword"

10 references on Google and Yahoo. A recent search on Google for "Booker Morey" shows at least

11 the first seven pages of entries for artwork based on Leaf Lines products, including the signature

12 Leaf Lines Small Shadowbox Designs, and a similar recent search for "Leaf Lines" produces as

13 the top ten hits references to galleries which carry Leaf Lines products.

14      13.  As a result of the above-mentioned publicity and professional success, the Leaf

15 Lines Small Shadowbox Designs are well known and widely recognized in the arts and crafts

16 communities as emanating exclusively from Plaintiff.

17      14.  The innovative selection and arrangement of Plaintiff's etched leaves in the matting

18 and framing materials comprising the Leaf Lines Small Shadowbox Designs comprise artistic

19 expression unlike any other imagery in the field.  This distinctive artistic expression comprising

20 the Leaf Lines Small Shadowbox Designs constitutes Plaintiff's exclusive trade dress by which

21 Plaintiff and Mr. Morey are well known in the arts and crafts industry.  Plaintiff has expended

22 significant resources promoting its products under the trade dress comprising the Leaf Lines

23 Small Shadowbox Designs.  Such trade dress is an extremely important aspect of Plaintiff's

24 success, and one of Plaintiff's most valuable assets.

25      15.  Since 1993, Plaintiff has been, and currently is, the exclusive United States and

26 worldwide source of genuine products comprising the Leaf Lines Small Shadowbox Designs.

27      16.  The Leaf Lines Small Shadowbox Designs are inherently distinctive and, in any

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR FEDERAL COPYRIGHT INFRINGEMENT, ETC.
-4-

1  event, have acquired distinctiveness through continuous and widespread use of thereof in the

2  U.S. and worldwide for nearly fifteen years.

3  **B.     The Parties' Prior Fiduciary Relationship**

4      17.  In March 1995, Mr. Morey met Defendant Michael Sage, then a resident of

5  Mountain View, California, at a crafts trade show in San Francisco, where Mr. Sage was

6  displaying and selling primarily vases made of wood. Thereafter the parties had ongoing

7  discussions regarding the possibility of having Mr. Sage sell Plaintiff's Leaf Lines products along

8  with Mr. Sage's own work at future art and wine festivals.

9      18.  On September 14, 1995, Mr. Sage drafted and Mr. Sage and Mr. Morey signed a

10  written  "Agreement between Michael Sage and Booker Morey, regarding working together to

11  sell, promote and extend Leaf Lines and Sage Designs." Under that agreement, which "covers

12  September 1995," Mr. Sage displayed and sold Leaf Lines products alongside his own Sage

13  Designs products at the September 1995 Mountain View crafts show. The September 1995

14  agreement also recited that the parties' "longer term intention" was to "find a way to work

15  together in a partnership or other arrangement to grow the businesses, and for Michael to assist

16  Booker with the intention of earning an equity position in Leaf Lines. How this is to be done isn't

17  yet known, nor is it a commitment by either Michael or Booker, but it forms the basis or the

18  consideration of efforts beyond representation by Michael at shows as a consignment retailer."

19      19.  After September 1995 Mr. Sage continued to promote and sell Leaf Lines products

20  on a consignment basis.

21      20.  In approximately October 1997, Mr. Sage suggested to Mr. Morey that Plaintiff

22  expand its product line to include larger shadowboxes (24" x 36"). Mr. Morey was not interested,

23  but agreed that Mr. Sage could sell such larger shadowboxes under the following arrangement:

24  Mr. Sage assembled frames, empty shadowboxes, mats and glass for such products. Plaintiff

25  arranged the layout of the branches and installed the etched leaves in the shadowboxes. Mr. Sage

26  then sold the finished 24" x 36" Leaf Lines shadowboxes pieces on behalf of Plaintiff.

27      21.  In June 1998, Mr. Morey began training Mr. Sage to make the leaf arrangements in

28

the Leaf Lines Small Shadowbox Designs. Plaintiff provided to Mr. Sage all the materials for making the arrangements: the colored or natural etched leaves, the birch twigs used for mounting the leaves, the specially designed shadowboxes custom-made for Leaf Lines to Plaintiff's specifications, the frames, mats and adhesive. Under Plaintiff's direction, Mr. Sage would choose the three leaves from the same species of tree, cut a twig to fit the shadowbox, and glue the three leaves on the twigs to fit in the mat opening per Plaintiff's instructions regarding arrangements for aesthetic effect and dimensionality. Mr. Sage's work assignments for Leaf Lines were no different than some of Plaintiff's full-time employees. Nearly always, Mr. Sage would leave the mounted arrangements for Plaintiff to "finish." "Finishing" would include removing dust from the velveteen lined shadowbox, cleaning the glass, assembling the glass, frame, mat and shadowbox, securing the shadowbox to frame, labeling the final piece, and bagging and inventorying the piece for pick-up by Mr. Sage for the next show. Mr. Sage did not participate in drying and pressing the leaves, the proprietary etching process, or bleaching and airbrushing the colors into the leaves. Mr. Sage had access and knowledge, with Plaintiff's permission, to see and learn all the operations of Plaintiff's business with the exception of Plaintiff's proprietary etching process.

22.   Mr. Sage did not purchase any materials that were included in the final Leaf Lines pieces. Plaintiff paid Mr. Sage for his assembly work even though the final pieces were consigned to Mr. Sage and Mr. Sage had no payment obligations until the pieces were sold. Mr. Sage was also paid, per leaf, to harvest suitable leaves per Plaintiff's specifications for future use. Mr. Sage was also paid a "finder's fee" as a sales representative for providing leads which Plaintiff developed into new customers, in the amount of 10% of new sales to such customers for the first year.

23.   In approximately March 1999, the parties began discussing the possibility that Mr. Sage might eventually buy the Leaf Lines business. These discussions have continued on and off to date.

24.   Mr. Sage continued to sell Leaf Lines products, including Leaf Lines Small

1  Shadowbox Designs assembled by Mr. Sage and finished by Plaintiff, at public arts festivals on a

2  consignment basis. However, Mr. Sage refused to attend wholesale trade shows which could

3  result in new retailers or galleries for Leaf Lines, even when Plaintiff offered him payment to do

4  so. Mr. Sage stated he refused to do so because obtaining new retailer customers for Plaintiff

5  could result in making the Leaf Lines business too valuable for him to be able to purchase.

6      25.   On October 24, 2001, Defendants Michael Sage and Susan Gilmour Sage, dba Sage

7  Designs, signed an agreement pursuant to which they (a) confirmed that they did not know the

8  Leaf Lines proprietary etching process, and they would not make an effort to learn the process

9  except from Mr. Morey or others with his permission; (b) agreed that they would not make or sell

10  products related to etched leaves except those made by direct permission of Leaf Lines, ( c)

11  agreed that such etched leaves products sold by Sage Designs would not be represented as

12  exclusively Sage Designs products, and (d) agreed that Leaf Lines trademarks would not be

13  obscured on such products  (the "2001 Agreement"). These provisions were to be effective at

14  least until the Leaf Lines business was sold to Sage Designs.

15      26.   In September 2002, the parties agreed to change the arrangement under which Sage

16  Designs would make and/or sell Leaf Lines products, from consignment to wholesale purchase of

17  products, net 30. Under this new arrangement, Plaintiff and Sage Designs would share equally in

18  the profits from the agreed-upon retail price. However, Sage Designs was authorized to increase

19  the actual retail price at his discretion, and to retain any excess profits from such increases. The

20  new arrangement went into effect in October 2002. Plaintiff continued to finish most of the Leaf

21  Lines products assembled and sold by Sage Designs.

22      27.   In December 2003, the Sages moved to Vancouver. Thereafter Plaintiff assembled

23  and finished all Leaf Lines products to be sold by Sage Designs. Plaintiff expressed concerns

24  regarding delayed payments for Sage's wholesale orders. Mr. Sage expressed concerns about his

25  cash flow.

26      28.   In October 2004, Mr. Sage purchased from Plaintiff loose etched leaves for use in

27  assembling large 36" x 48" and 24" x 36" Leaf Lines shadowboxes in Vancouver. In February

28

1   2005, Mr. Sage made his last purchase of genuine Leaf Lines products, namely, fourteen 11' x

2   14" and forty-two 8" x 10" products comprising Leaf Lines Small Shadowbox Designs.

3        29.  In July 2005, Defendants demanded that Plaintiff name a price for selling the Leaf

4   Lines business to them. Thereafter the parties' ongoing discussions regarding the purchase price

5   and financing for the proposed sale became acrimonious. Mr. Sage advocated a greatly reduced

6   price to be paid over time, in consideration of his alleged contributions to growing the Leaf Lines

7   business. Plaintiff required a purchase price closer to actual value of the business with a discount

8   based on generally accepted practice, and full payment up front. Mr. Sage continued to negotiate

9   for his purchase of the Leaf Lines business at least through August 22, 2005, when Mr. Sage

10   reiterated his proposed terms. On May 2, 2006, Plaintiff, through letter from his counsel,

11   suspended such discussions pending resolution of Plaintiff's infringement claims (as set forth

12   more fully below).

13        30.  All products comprising the Leaf Lines Small Shadowbox Designs sold and/or made

14   by Sage under Plaintiff's authorization were created and assembled in compliance with

15   Plaintiff's instructions and thereby duplicated the selection, arrangement and co-ordination

16   comprising Plaintiff's pre-existing Leaf Lines Small Shadowbox Designs. Sage did not make

17   significant choices regarding the selection, arrangement, coloration, mounting materials or

18   frames comprising these products.

19        31.  Throughout the time that Mr. Sage made and sold Leaf Lines products under

20   Plaintiff's authorization, Plaintiff had expressed concerns about the poor quality of Leaf Lines

21   products made by Mr. Sage. As a result, Mr. Sage made Leaf Lines products solely for his own

22   inventory.

23        32.  From March 1995 when Mr. Sage first began working for Plaintiff, through at least

24   May 2, 2006 when Plaintiff sent its first demand letter to Defendants, Mr. Sage worked for

25   Plaintiff as a sales agent for Leaf Lines products, and at all times Mr. Sage was fully

26   compensated for his work as an independent contractor, including collecting leaves, assembling

27   arrangements, carpentry work to the inside of Plaintiff's building, and building the larger

28

1  shadowboxes, on terms mutually agreed to by the parties. Mr. Sage was given, rent-free, an

2  office/workroom/salesroom. The parties intended that all work done on behalf of Plaintiff by Mr.

3  Sage inured to the benefit of Plaintiff. The parties did not conduct themselves as co-owners of

4  the Leaf Lines business. Mr. Sage did not receive any share of profits or gross returns from the

5  Leaf Lines business.

6      33.   Plaintiff has never disclosed the Leaf Lines proprietary leaf etching process to

7  Defendants, nor authorized any of Plaintiff's employees or agents to do so. Plaintiff's proprietary

8  leaf etching process was performed in a separate location to which Sage was not authorized to

9  have access.

10 **C.     Defendants' Infringing Conduct**

11     34.   Upon information and belief, at least as early as June 2005, Defendants Michael

12 Sage and Susan Gilmour Sage, dba Sage Designs, were making and selling products comprising

13 nearly identical copies of Leaf Lines Small Shadowbox Designs ("Sage Design Knockoffs"), as

14 well as genuine Leaf Lines products with the Leaf Lines labels removed, at public arts festivals

15 and online under the "Sage Designs" trade name and mark, and the slogan "The Fine Art of

16 Phantom Leaves" (collectively, the "Sage Marks"). True and correct examples of the Sage

17 Design Knockoffs comprise Exhibit B.

18     35.   Upon information and belief, at least as early as June 2005, Defendants

19 misrepresented to their customers at trade shows and public arts festivals that Mr. Sage was

20 aware of and even participated in developing the Leaf Lines proprietary etching process.

21     36.   Upon information and belief, in June 2005 Defendants, together with several other

22 business partners, opened the Gilbert District Gallery in Seaside, Oregon. Soon thereafter the

23 Gilbert District Gallery began displaying and offering for sale Sage Designs Knockoffs under the

24 Sage Designs Marks.

25     37.   At least through May 2006, on the Sage Designs website, Mr. Sage misrepresented

26 the nature of his prior "symbiotic relationship" with Booker Morey and Plaintiff to falsely

27 suggest that his products utilized the same etching process and overall product quality as Leaf

28

1    Lines products. The site also offered preferential credit terms to galleries presently carrying Leaf

2    Lines products.

3        38.    At least through May 2006, on the Sage Designs website, the "Guest Book" page

4    displayed quotes of endorsement and praise from some purported customers of Sage Designs

5    products who were actually talking about genuine Leaf Lines products.

6        39.    On May 2, 2006, Plaintiff, through counsel, sent a letter to Defendants, which, *inter*

7    *alia*, demanded that Defendants immediately remove and discontinue the misrepresentations

8    described above and that appropriate additional steps be taken to redress the harm to Plaintiff

9    resulting from their display and distribution. This letter also stated that Plaintiff would no longer

10   negotiate for sale of the business to Sage, and offered alternative proposals for allowing

11   Defendants to continue making and selling etched leaves products.

12       40.    By letter dated September 6, 2006, and subsequent correspondence between the

13   parties, Defendants refused Plaintiff's business proposals, and Plaintiff demanded that

14   Defendants cease all display and sale of the Sage Designs Knockoffs.

15       41.    At least as of May 2006 and continuing to date, Defendants have made false

16   statements online and in Sage Designs promotional materials suggesting that Leaf Lines

17   proprietary process is actually an ancient process, and that Defendants' products utilize the same

18   process. These include misrepresentations that an "ancient art of skeletonizing leaves" was

19   "rediscovered" by Mr. Morey; that "Booker introduced me to the ancient art of skeletonizing

20   leaves"; and that "the Art of skeletonizing leaves has been around for hundreds of years and was

21   regularly practiced in the Victorian era." Defendants' websites have also posted numerous third-

22   party materials and references to third party sites discussing various leaf etching processes,

23   creating the false implication that the Leaf Lines process and/or its products are not unique.

24       42.    Upon information and belief, to date, Defendants have continued to misrepresent at

25   trade shows, pubic arts festivals, online and in Sage Designs promotional materials that Mr. Sage

26   and Mr. Morey "collaborated to design, produce and market a line of shadow boxes that

27   contained skeletons of real leaves"; and that Mr. Sage "co-developed" the Leaf Lines Small

28

1  Shadowbox Designs.

2      43.  Upon information and belief, to date, Defendants have continued to make false

3  statements at trade shows, pubic arts festivals, online and in Sage Designs promotional materials

4  about the nature of Mr. Sage's prior working relationship with Mr. Morey. These include

5  misrepresentations that Mr. Sage was "offered a partnership," that Mr. Morey "partnered" with

6  Mr. Sage; and that Mr. Morey asked Mr. Sage to help him develop a craft business "in exchange

7  for 'stock' in the future success." Mr. Sage has never been a partner in the Leaf Lines business

8  and has never been promised "stock" in the business.

9      44.  Upon information and belief, to date, Defendants have continued to make statements

10  at trade shows, pubic arts festivals, online and in Sage Designs promotional materials which

11  suggest that Sage Designs has been and is the only source of etched leaf shadowbox products.

12  For example, in a postcard sent to galleries and retailers earlier this year, Mr. Sage touts his

13  products and invites the recipients to visit his booth at Wholesalecrafts.com's annual national

14  ACRE (American Craft Retailers Expo) arts and crafts show in Las Vegas in May 2007, stating

15  "Perhaps you are already familiar with my very popular shadow box line. I have made major

16  improvements that have dramatically increased their salability [sic], while maintaining costs."

17      45.  Since March 2006, Plaintiff has been a listed vendor on the Wholesalecrafts.com

18  website.

19      46.  Upon information and belief, Defendants' promotional materials as described above

20  have been sent by email and regular mail to Leaf Lines customers and potential customers

21  nationwide, including within the Northern District of California.

22      47.  Upon information and belief, Defendants' websites operating under the Sage

23  Designs Marks are interactive sites through which Defendants, at all times relevant to this action

24  actively display and solicit sales of Sage Design products, including the Sage Design Knockoffs,

25  as well as the misrepresentations described above, to online viewers nationwide, including in the

26  Northern District of California. Defendants also actively promote Sage Design products,

27  including the Sage Design Knockoffs, to potential customers and Plaintiff's current customers

28

1 nationwide, including within the Northern District of California, through third-party websites

2 such as <www.wholesalecrafts.com>.

3    48.  Upon information and belief, to date Defendants continue to display and offer for

4 sale Sage Design Knockoffs at trade shows and public arts festivals and to misrepresent to the

5 attendees and trade show and festival organizers that Defendants created and own rights in the

6 Leaf Lines Small Shadowbox Designs, including without limitation at Wholesalecrafts.com's

7 annual national ACRE (American Craft Retailers Expo) arts and crafts show in Las Vegas in

8 May 2007.

9    49.  Defendants have represented on its listing on the Wholesalecrafts.com site that Sage

10 Designs has over fifty retailer customers for its products, including the Sage Designs Knockoffs.

11    50.  On information and belief, at least as of June 2006, the Gilbert District Gallery

12 continued to display and offer for sale Sage Designs Knockoffs.

13    51.  Plaintiff has received and continues to receive comments and inquiries from Leaf

14 Lines' wholesale customers and their potential retail customers about an association between

15 Sage Designs and Leaf Lines, and which demonstrate confusion over the source of Leaf Lines

16 products, including Leaf Lines Small Shadowbox Designs, including mistaken assumptions that

17 Sage Designs is the originator and only source of such products.

18    52.  Upon information and belief, Defendants plan to continue their unauthorized

19 copying and use of the Leaf Line Shadowbox Designs, and unless restrained by this court, will

20 continue to unfairly compete with Plaintiff by marketing and selling the Sage Design Knockoffs.

21    53.  Upon information and belief, Defendants plan to continue their misrepresentations

22 regarding the Leaf Lines proprietary process, the nature of the prior relationship between the

23 parties, the authorship of the Leaf Lines Small Shadowbox Designs, and the nature of the Sage

24 Design Knockoffs, and unless restrained by this court, will continue to unfairly compete with and

25 disparage Plaintiff by making such misrepresentations.

26 //

27 //

28

**FIRST CLAIM FOR RELIEF**

**Federal Copyright Infringement Under 17 U.S.C. §101 et seq.**

54.  Plaintiff restates and reavers the allegations of paragraphs 1 through 53, inclusive.

55.  Plaintiff owns valid copyrights in artworks featuring the Leaf Lines Small Shadowbox Designs (the "Copyrighted Works"). At all times relevant hereto, Plaintiff has been and still is the exclusive owner, with the sole authority to exploit the Copyrighted Works, and as such Plaintiff has standing to assert claims of copyright infringement.

56.  At all times relevant hereto, all or substantially all copies of Leaf Line's Copyrighted Works made by Plaintiff or under Plaintiff's authority or license in the United States and elsewhere have been made in strict conformity with the Copyright Act of the United States and all other laws governing copyright in the areas where the items have been published.

57.  At all times relevant hereto, all or substantially all of Plaintiff's genuine materials bearing the Copyrighted Works have been marked with copyright notices claiming copyright in Plaintiff's name.

58.  Plaintiff's Copyrighted Works constitute original artwork created by Plaintiff.

59.  Plaintiff's Copyrighted Works represent copyrightable subject matter under the laws of the United States.

60.  Plaintiff has not conveyed any copyright interest in the Copyrighted Works to Defendants.

61.  Defendants had access to Plaintiff's Copyrighted Works through Mr. Sage's prior working relationship with Plaintiff. Plaintiff's Copyrighted Works have been extensively published and displayed worldwide, including on Plaintiff's promotional publications, Plaintiff's websites, third party websites, and trade shows.

62.  The products comprising Defendant's Sage Design Knockoffs are identical or strikingly similar copies of the Leaf Lines Small Shadowbox Designs, and their creation, display, offering for distribution, distribution and sale by Defendants constitute willful and unauthorized distribution, copying and misappropriation of substantial or entire portions of the artwork

1   contained in, and original to, Plaintiff's Copyrighted Works, including without limitation the

2   Copyrighted Works covered by the U.S. Copyright registrations set forth in Exhibit A.

3       63.   Upon information and belief, Defendants intentionally and willfully created,

4   imported, marketed, sold, and/or distributed materials bearing copies of Plaintiff's Copyrighted

5   Works, without authority of Plaintiffs or their agents, including display of images comprising the

6   Sage Design Knockoffs on their own and third-party websites.

7       64.   Defendants and each of them have induced, caused or materially contributed to the

8   infringing acts alleged herein and are each liable to Plaintiff for direct, contributory or vicarious

9   copyright infringement, or inducing the same.

10      65.   Defendants and each of them have benefitted economically in the form of continued

11  and increased revenues and enhanced reputation from the promotion and sale of the

12  infringements alleged herein.

13      66.   By their wrongful acts, Defendants have, and unless enjoined by this Court, will

14  continue to cause serious and irreparable harm to Plaintiff. Plaintiff has no adequate remedy at

15  law.

16      67.   As a direct and proximate result thereof, Plaintiff has been and continues to be

17  damaged in an amount to be proven at trial.

18                      **SECOND CLAIM FOR RELIEF**

19      **Federal Unfair Competition, Common Law Trade Dress Infringement**

20                      **Under 15 U.S.C. § 1125(a)**

21      68.   Plaintiff restates and reavers the allegations of Paragraphs 1 through 67, inclusive.

22      69.   Plaintiff's common law trade dress, namely, the distinctive expression comprising

23  the Leaf Lines Small Shadowbox Designs (the "Leaf Lines Trade Dress"), is inherently

24  distinctive. Moreover, as described above, the Leaf Lines Trade Dress has been extensively

25  used, advertised, and promoted through the United States, and the world in connection with

26  Plaintiff's products.

27      70.   As a result of Plaintiff's use, advertisement, and promotion of the Leaf Lines Trade

28

Dress, the Leaf Lines Trade Dress has become well and favorably known throughout the United States and world as identifying Plaintiff and its products. Plaintiff has developed exceedingly valuable goodwill with respect to the Leaf Lines Trade Dress.

71. Defendants have created, imported, advertised, promoted, displayed, offered for sale, and/or sold poor quality works comprising identical, or nearly identical copies of the Leaf Lines Trade Dress (the "Sage Designs Knockoffs").

72. Defendants' display of the Sage Designs Knockoffs is likely to cause members of the relevant public and trade to believe that the products offered by Defendants are provided by or in affiliation with or under the sponsorship or approval of Plaintiff, in light of the confusing similarity between the Sage Designs Knockoffs and Plaintiffs' genuine Leaf Lines Trade Dress.

73. Defendants selected, adopted and/or used the Sage Designs Knockoffs with knowledge of the Leaf Lines Trade Dress, and the valuable goodwill and business reputation associated therewith and with willful intent to confuse, mislead, and deceive the public into believing Defendants' products emanate from Plaintiff or are in some manner associated with, approved or endorsed by Plaintiff.

74. Upon information and belief, Defendants' acts complained of herein occurred after the Leaf Line Shadowbox Designs became distinctive of source.

75. Defendants' offering of the poor quality products utilizing the Leaf Lines Trade Dress threatens to undermine or even destroy the legitimate market for genuine Leaf Lines products.

76. Upon information and belief, unless restrained by this Court, Defendants will continue to infringe Plaintiffs' genuine Leaf Lines Trade Dress by its use of the above-identified Sage Designs Knockoffs.

77. As set forth more fully above, Defendants have made several false and misleading descriptions of facts in their commercial advertising and promotions, which misrepresent the nature, characteristics, qualities and origins of Leaf Lines products and the Leaf Lines Small Shadowbox Designs, as well as Defendants' own products comprising Sage Designs Knockoffs

1  (the "False Advertising Misrepresentations").

2    78.  On information and belief, Defendants made the False Advertising

3  Misrepresentations with willful intent to confuse, mislead, and deceive the public.

4    79.  Upon information and belief, unless restrained by this Court, Defendants will

5  continue make false the False Advertising Misrepresentations.

6    80.  Defendants' wrongful acts will destroy the ability of the Leaf Lines Small

7  Shadowbox Designs to serve as an identification of a single source, will dilute the Leaf Lines

8  Small Shadowbox Designs by lessening their capacity to identify and distinguish services

9  emanating from Plaintiff from other goods and services and will rob Plaintiff of the value

10  thereof.

11    81.  Defendants and each of them have induced, caused or materially contributed to the

12  infringing acts and unlawful conduct alleged herein and are each liable to Plaintiff for direct,

13  contributory or vicarious trade dress infringement and false advertising, or inducing the same.

14    82.  Defendants and each of them have benefitted economically in the form of continued

15  and increased revenues and enhanced reputation from promotion of the Sage Designs Knockoffs.

16    83.  By their wrongful acts, Defendants, unless restrained by this Court, will cause

17  serious and irreparable harm to Plaintiff.  Plaintiff has no adequate remedy at law.

18    84.  As a direct and proximate result thereof, Plaintiff has been and continue to be

19  damaged in an amount to be proven at trial.

20    **THIRD CLAIM FOR RELIEF**

21    **Unfair Competition Under Cal. Bus. & Prof. Code § 17200**

22    85.  Plaintiff restates and reavers the allegations of paragraphs 1 through 84, inclusive.

23    86.  Defendants' above-averred actions constitute unlawful, unfair, and fraudulent

24  business practices and unfair, deceptive, misleading, and false advertising in violation of Cal.

25  Bus. & Prof. Code § 17200, *et seq.*

26    87.  By their wrongful acts, Defendants have, and unless enjoined by this Court, will

27  continue to cause serious and irreparable harm to Plaintiff. Plaintiff has no adequate remedy at

28

1  law.

2  88.  As a direct and proximate result thereof, Plaintiff has been and continue to be

3  damaged in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**Breach of Contract**

6  89.  Plaintiff restates and reavers the allegations of paragraphs 1 through 88, inclusive.

7  90.  The provisions of the 2001 Agreement under which Defendants (a) confirmed that

8  they did not know the Leaf Lines proprietary etching process, and they would not make an effort

9  to learn the process except from Mr. Morey or others with his permission; (b) agreed that they

10  would not make or sell products related to etched leaves except those made by direct permission

11  of Leaf Lines, ( c) agreed that such etched leaves products sold by Sage Designs would not be

12  represented as exclusively Sage Designs products, and (d) agreed that Leaf Lines trademarks

13  would not be obscured on such products, were effective at least until negotiations for sale of the

14  Leaf Lines business to Sage Designs broke down in May 2006.

15  91.  Plaintiff has performed all terms, conditions, and obligations required of Plaintiff

16  under the 2001 Agreement.

17  92.  As set forth above, at least as of June 2005 and continuing through at least May

18  2006, Defendants have (a) represented to the public that Mr. Sage was aware of and even co-

19  developed the Leaf Lines proprietary process; (b) made and sold products related to etched leaves

20  without authorization from Plaintiff;  ( c) represented that Leaf Lines products sold by

21  Defendants were exclusively Sage Designs products, and (d) sold Leaf Lines products on which

22  the Leaf Lines trademarks were obscured and/or removed. Each of these actions constitutes a

23  material breach of the 2001 Agreement by Defendants.

24  93.  By their wrongful acts, Defendants have, and unless enjoined by this Court, will

25  continue to cause serious and irreparable harm to Plaintiff. Plaintiff has no adequate remedy at

26  law.

27  94.  As a direct and proximate result thereof, Plaintiff has been and continue to be

28

1  damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

95. Plaintiff restates and reavers the allegations of paragraphs 1 through 94, inclusive.

96. In his position as an independent contractor sales agent for Plaintiff, Mr. Sage was entrusted with duties directly affecting the functioning and success of Plaintiff's Leaf Lines business, including promoting and selling Leaf Lines products. Thus Mr. Sage was in a special relationship with Plaintiff giving rise to a fiduciary duty owed to Plaintiff at least through May 2, 2006.

97. Defendants breached their fiduciary duty to Plaintiff by engaging in activities which constituted conflicts of interest and self-dealing, including the establishment of a directly competing business in Plaintiff's established markets, and acts of disparagement and misrepresentations regarding Plaintiff and Plaintiff's products as set forth above.

98. Defendants' breach of fiduciary duty was oppressive and malicious, and in conscious disregard of Plaintiff's rights.

99. By their wrongful acts, Defendants have, and unless enjoined by this Court, will continue to cause serious and irreparable harm to Plaintiff. Plaintiff has no adequate remedy at law.

100. As a direct and proximate result thereof, Plaintiff has been and continue to be damaged in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Misrepresentation Under DMCA, 17 U.S.C. § 512(f)

101. Plaintiff restates and reavers the allegations of paragraphs 1 through 100, inclusive.

102. Defendants have caused images of the infringing Sage Designs Knockoffs to be displayed on several websites, including <www.acrelasvegas.com> and <www.wholesalecrafts.com>.

103. In April 2007, Plaintiff sent notices under the DMCA, 17 U.S.C. § 512, to third

1  parties who, on information and belief, have caused or contributed to the display and sale of the

2  infringing Sage Designs Knockoffs. One such notice was sent to Wholesalecrafts.com regarding

3  displays of infringing images on its websites <www.acrelasvegas.com> and

4  <www.wholesalecrafts.com>. Wholesalecrafts.com eventually removed the infringing images

5  from its sites.

6      104.   On July 24, 2007, Plaintiff received notice from Wholesalecrafts.com that the

7  infringing images would be returned to its site based on a purported DMCA counter-notice

8  provided by Mr. Sage. The counter-notice by Mr. Sage (as forwarded to Plaintiff by

9  Wholesalecrafts.com) states, under penalty of perjury, that the materials were removed as a result

10  of mistake or misidentification, and that "Mr. Morey and I (Michael Sage) have been

11  collaborative partners and I was the driving creative force in the relationship and own any

12  enforceable rights therein. The 'copyrights' by Mr. Morey having thus been falsely filed claiming

13  himself as sole author. I have contributed copyrightable elements to the product line which can

14  be corroborated"; and "Further, the inability to enforce these rights is well documented in the

15  ninth circuits [sic]. The courts have long since demonstrated their reluctance to grant broad

16  copyrights which give monopoly powers to individuals. Please see the following example:

17  SATAVA v. LOWRY, 323 F.3d 805 (9th Cir. 2003)."

18      105.   The statements referenced above in Sage's purported counter-notice are false and

19  constitute material misrepresentations. As set forth above, Mr. Sage did not collaborate on or

20  contribute copyrightable authorship to the Leaf Lines Small Shadowbox Designs replicated in the

21  Sage Designs Knockoffs.

22      106.   Mr. Sage knowingly made the false statements referenced above with willful intent

23  to mislead Wholesalecrafts.com and to cause the infringing materials to be re-posted.

24      107.   Defendants' counter-notice failed to include a statement that Defendants consent to

25  the jurisdiction of Federal District Court for the judicial district in which the address is located,

26  or that Defendants will accept service of process from Plaintiff, in violation of 17 U.S.C. §

27  512(g)((3)(D).

28

108.  Defendants' above-averred actions constitute misrepresentation and perjury in violation of 17 U.S.C. § 512(f).

109.  By their wrongful acts, Defendants have, and unless enjoined by this Court, will continue to cause serious and irreparable harm to Plaintiff. Plaintiff has no adequate remedy at law.

110.  As a direct and proximate result thereof, Plaintiff has been and continue to be damaged in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Judgment Under 28 U.S.C. § 2201

111.  Plaintiff restates and reavers the allegations of paragraphs 1 through 110, inclusive.

112.  As set forth above, Defendants claim that Mr. Sage created and owns copyright interests in Leaf Lines Small Shadowbox Designs and that Plaintiff's copyrights are unenforceable. Plaintiff alleges that Plaintiff is the sole creator and owner of valid and enforceable copyrights in the Leaf Lines Small Shadowbox Designs.

113.  Accordingly, a judiciable case or controversy exists between Plaintiff and Defendants with respect to the validity and ownership of such copyrights.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.  Declaratory judgment that Plaintiff is the sole author and copyright owner of the Leaf Lines Small Shadowbox Designs, that Plaintiff's copyright registrations therefor are valid, and that Defendants have infringed Plaintiff's copyrights in the Leaf Lines Shadowbox Designs.

2.  That Defendants, Defendants' agents, employees, and licensees, and all persons or entities in active concert or participation with any of them who receive notice of the Court's Order, be preliminarily and permanently enjoined from:

A.  Creating, manufacturing, causing to be created or manufactured, importing, displaying, marketing, promoting, advertising, distributing, selling, and/or otherwise disposing of any materials that incorporate, reflect, or contain any unauthorized use of the Leaf Lines Small Shadowbox Designs, including without limitation the Sage Designs Knockoffs

1  (collectively "Infringing Materials"), and/or infringing Plaintiff's copyrights or trade dress

2  therein in any manner;

3          B.     Otherwise infringing any of Plaintiff's copyrights or trademarks;

4          C.     Making false or misleading descriptions of facts in their commercial

5  advertising and promotions, which misrepresent the nature, characteristics, qualities and origins

6  of Leaf Lines products and the Leaf Lines Small Shadowbox Designs, as well as Defendants'

7  own products comprising Sage Designs Knockoffs, including without limitation any statements,

8  suggestions or implications that (1) Defendants developed the Leaf Lines proprietary process, (2)

9  Defendants' products utilize the Leaf Lines proprietary process, (3) Defendants contributed to or

10  own any rights in, including without limitation copyright or trade dress, in the Leaf Lines Small

11  Shadowbox Designs, (4) Defendants are the originators or only source of etched leaf products, or

12  (5) Mr. Sage was a business "partner" in Leaf Lines, or that he was offered a partnership, or that

13  Mr. Morey asked Mr. Sage to help him develop a craft business in exchange for stock in the

14  future success.

15          D.     Otherwise competing unfairly with Plaintiff.

16       3.     That Defendants, their agents, employees, and licensees, and all those acting

17  under its direction and pursuant to its control, be directed to notify Wholesalecrafts.com, Gilbert

18  District Gallery, and any other venue where the Infringing Materials have been displayed or

19  offered for sale, (a) declaring that the Infringing Materials were displayed and distributed without

20  authorization, and (b) requiring that display or offering for sale of  Infringing Materials be

21  immediately discontinued, and ( c) all materials comprising copies of such images be delivered

22  up for destruction.

23       4.     That Defendants, their agents, employees, and licensees, and all those acting

24  under its direction and pursuant to its control, be directed to deliver up for destruction all

25  Infringing Materials, and other matter employed in the creation, distribution and sale of

26  Infringing Materials.

27       5.     That Defendants be required to pay Plaintiff:

28

A.    Any and all profits made by Defendants as a result of the aforesaid infringements, together with interest thereupon in an amount presently unknown;

B.    Plaintiff's damages in an amount presently unknown but believed to be in excess of $50,000, together with interest;

C.    Disgorgement of Defendants' profits and/or unjust enrichment in an amount to be determined at trial:

D.    Three times the profits and damages pursuant to 15 U.S.C. § 1117(b); and

E.    Statutory damages in the amount of $150,000 per copyright infringement, the maximum allowable as provided under and pursuant to 17 U.S.C. § 504( c), as amended; and

F.    Punitive damages in an amount to be determined at trial.

6.    That Defendants be required to pay Plaintiff's costs of this action, together with Plaintiff's reasonable attorneys' fees, under 17 U.S.C. § 505 and 15 U.S.C. §1117(a).

7.    That the Court award Plaintiff such other and further relief as this Court shall deem just and proper.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: 8/6/07

By _____
Lawrence G. Townsend
Linda Joy Kattwinkel
Attorneys For Plaintiff,
Leaf Lines LLC

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of all issues in the above-captioned action which are triable to a jury.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: 8/6/07

By _____
Lawrence G. Townsend
Linda Joy Kattwinkel

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR FEDERAL COPYRIGHT INFRINGEMENT, ETC.

-22-

Attorneys For Plaintiff
Leaf Lines LLC

## CERTIFICATION RE INTERESTED PARTIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: 8/6/07                    By _____

Lawrence G. Townsend
Linda Joy Kattwinkel

Attorneys For Plaintiff
Leaf Lines LLC

S:\1Clients\LEAFL\70001\Complaint 8-06-07.wpd