1  LAWRENCE G. TOWNSEND, ESQ. (S.B.N. 88184)
   LINDA JOY KATTWINKEL, ESQ. (S.B.N. 164283)
2  OWEN, WICKERSHAM & ERICKSON, P.C.
   455 Market Street, Suite 1910
3  San Francisco, CA 94105
   Telephone: 415-882-3200
4  Telecopier: 415-882-3232
   ltownsend@owe.com
5  ljk@owe.com

6  Attorneys for Plaintiffs,
   Leaf Lines LLC and Booker Morey
7

8                  UNITED STATES DISTRICT COURT

9          IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  LEAF LINES LLC, a California Company,        Civil Action No. C 07 4015 MMC
    and Booker Morey, a California state
12  resident,
                                                 FIRST AMENDED COMPLAINT
13              Plaintiffs,                       FOR INJUNCTIVE RELIEF AND
                                                 DAMAGES FOR:
14      vs.                                      (1)    Federal Copyright Infringement;
                                                 (2)    Federal Unfair Competition;
15  MICHAEL D. SAGE and SUSAN                    (3)    Unfair Competition Under California
    GILMOUR SAGE, Washington state                      Law
16  residents dba SAGE DESIGNS, and DOES         (4)    Breach of Contract Under California
    1- 100,                                             Law;
17                                               (5)    Breach of Fiduciary Duty Under
                Defendants.                             California Law;
18  _____/           (6)    Misrepresentation Under the DMCA;
                                                        and
19                                               (7)    Declaratory Relief.

20                                               Demand for Jury Trial

21

22       Plaintiffs Leaf Lines LLC and Booker Morey for their complaint against Defendants

23  Michael D. Sage and Susan Gilmour Sage dba Sage Designs, and Does 1-100, allege as follows:

24                            **NATURE OF THE ACTION**

25       1.   This is an action to redress violations of the federal copyright laws, 17 U.S.C.

26  § 501, et seq., federal laws of unfair competition, 15 U.S.C. §1125(a) et seq., as amended,

27  California state law of unfair competition, Cal. Bus. & Prof. Code § 17200 et seq., breach of

28  contract under California law, breach of fiduciary duty under California law, misrepresentation

---

FIRST AMENDED COMPLAINT FOR FEDERAL COPYRIGHT INFRINGEMENT, ETC.                    -1-

under the federal Digital Millennium Copyright Act, 17 U.S.C. § 512(f), and declaratory relief under 28 U.S.C. § 2201, as the result of willful and unauthorized use by Defendants of Plaintiffs' copyrighted expression and trade dress, and willful misrepresentations regarding Plaintiffs' copyrighted expression, trade dress and business, as more fully set forth hereinafter.   Plaintiffs seek injunctive relief restraining infringement by Defendants of Plaintiffs' copyrights and trade dress, damages as the direct and proximate result thereof, and related relief.

**THE PARTIES**

2.   Plaintiff Booker Morey is a resident of Palo Alto, California.  From 1993 to November 2005, Booker Morey acted as a sole proprietorship doing business as Leaf Lines.

3.   Plaintiff Leaf Lines LLC, is a company organized and existing under the laws of the state of California, with its principal place of business located at 1166 Independence Avenue, Mountain View, California 94043. Leaf Lines, LLC was formed on or about November 8, 2005, and is the successor in interest and/or assignee to all of the assets, rights, claims and causes of action, intellectual property developed and owned previously by Mr. Morey's sole proprietorship Leaf Lines, and the rights to bring actions for breaches and infringements thereon.  Booker Morey is the manager and sole member of Leaf Lines, LLC.

4.   Upon information and belief, Defendants Michael D. Sage and Susan Gilmour Sage are husband and wife doing business as Sage Designs, with a principal place of business at 5008 NE 20th Avenue, Vancouver, WA 98663.

5.   Plaintiffs do not know the true names of the individuals, corporations, partnerships or other entities sued and identified herein as Does 1 through 100.  Plaintiffs allege that said Defendants are liable to Plaintiffs under the claims for relief set forth below, and request leave of this Court to amend this Complaint when the true names of said Defendants are discovered.

**JURISDICTION AND VENUE**

6.  This Court has subject matter jurisdiction over Plaintiffs' claims under and pursuant to 28 U.S.C. §§ 1331 and 1338.  This court has supplemental jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1367.

7.   Venue in the Northern District of California is proper pursuant to 28 U.S.C. § 1391(b),

1 § 1392 and § 1400(a).

2 **INTRADISTRICT ASSIGNMENT**

3 8. Assignment on a district-wide basis is appropriate under Civil Local Rule 3-2( c)

4 because this is an Intellectual Property Action. Assignment on a district-wide basis is appropriate

5 under Civil Local Rule 3-2( c) because this is an Intellectual Property Action.

6 **ALLEGATIONS COMMON TO ALL COUNTS**

7 **A.    Plaintiffs' Intellectual Property**

8 9. Plaintiff Leaf Lines manufactures and sells fine arts and crafts products at wholesale

9 throughout the United States. Plaintiffs' success is due to the distinctive expression that

10 characterizes the unique works featuring etched leaves. In 1993, Plaintiff Booker Morey

11 developed a proprietary process for a leaf-etching process for creating "skeletonized" or "etched"

12 leaves. Plaintiffs have kept this process confidential. Plaintiffs have carefully protected the

13 process against unnecessary disclosure even to Leaf Lines employees and close business

14 associates, and has required everyone authorized to utilize or know about the process to sign

15 nondisclosure agreements.

16 10. In 1993, Mr. Morey developed a distinctive design for shadowbox artworks which

17 feature three-dimensional collages of etched leaves created through Plaintiffs' process. The

18 collages feature etched leaves of the same species, in particular colors, mounted on particular

19 backgrounds in small shadowboxes (referred to by their inside dimensions: 5" x 7", 8" x 10", and

20 11" x 14") comprised of particular proportions of matting materials and frames (the "Leaf Lines

21 Small Shadowbox Designs").

22 11. Since 1993, Plaintiffs have created and sold thousands of products comprising the

23 Leaf Lines Small Shadowbox Designs. Plaintiff Leaf Lines, LLC owns, by assignment from Mr.

24 Morey, ten (10) U.S. Copyright Registrations which protect the Leaf Lines Small Shadowbox

25 Designs as set forth in Exhibit A.

26 12. Since 1993, Plaintiffs have extensively promoted the Leaf Lines Small Shadowbox

27 Designs to U.S. customers through the distribution of over 600 Leaf Lines samples and

28 descriptive literature to candidate galleries in the United States; Plaintiffs have sent over 700

directed postcard advertisements promoting Leaf Lines products, including the Leaf Lines Small

Shadowbox Designs, to very select galleries, and have advertised the Leaf Lines Small

Shadowbox Designs extensively in printed advertisements in important trade magazines and

buyers' guides; Plaintiffs have participated in a number of national wholesale shows including

the San Francisco International Gift Fair, the New York International Gift Fair, and the Buyers

Market of American Craft in Philadelphia, all of which featured Leaf Lines Small Shadowbox

Designs as Leaf Lines' signature products; Leaf Lines Small Shadowbox Designs products are

included on a website owned by WholesaleCrafts.com, as well as Leaf Lines' own webiste

<www.leaflines.com> which is directed to gallery owners. A large catalog of Leaf Lines products

which feature the Leaf Lines Small Shadowbox Designs on CD-Rom has been sent to at least

250 interested galleries to date.

13.    Plaintiffs also promote their Leaf Lines products through purchased "adword"

references on Google and Yahoo. A recent search on Google for "Booker Morey" shows at least

the first seven pages of entries for artwork based on Leaf Lines products, including the signature

Leaf Lines Small Shadowbox Designs, and a similar recent search for "Leaf Lines" produces as

the top ten hits references to galleries which carry Leaf Lines products.

14.    As a result of the above-mentioned publicity and professional success, the Leaf

Lines Small Shadowbox Designs are well known and widely recognized in the arts and crafts

communities as emanating exclusively from Plaintiffs.

15.    The innovative selection and arrangement of Plaintiffs' etched leaves in the matting

and framing materials comprising the Leaf Lines Small Shadowbox Designs comprise artistic

expression unlike any other imagery in the field.  This distinctive artistic expression comprising

the Leaf Lines Small Shadowbox Designs constitutes Plaintiffs' exclusive trade dress by which

Plaintiffs Leaf Lines, LLC and Mr. Morey are well known in the arts and crafts industry.

Plaintiffs have expended significant resources promoting Leaf Lines products under the trade

dress comprising the Leaf Lines Small Shadowbox Designs.  Such trade dress is an extremely

important aspect of Plaintiffs' success, and one of Plaintiffs' most valuable assets.

16.    Since 1993, Plaintiffs have been, and currently Plaintiff Leaf Lines, LLC is, the

1  exclusive United States and worldwide source of genuine products comprising the Leaf Lines

2  Small Shadowbox Designs.

3       17.   The Leaf Lines Small Shadowbox Designs are inherently distinctive and, in any

4  event, have acquired distinctiveness through continuous and widespread use of thereof in the

5  U.S. and worldwide for nearly fifteen years.

6       B.    The Parties' Prior Fiduciary Relationship

7       18.   In March 1995, Mr. Morey met Defendant Michael Sage, then a resident of

8  Sunnyvale, California, at a crafts trade show in San Francisco, where Mr. Sage was displaying

9  and selling primarily vases made of wood. Thereafter the parties discussed the possibility of

10 having Mr. Sage sell Plaintiff's Leaf Lines products along with Mr. Sage's own work at future art

11 and wine festivals.

12      19.   On September 14, 1995, Mr. Sage and Mr. Morey signed a written  "Agreement

13 between Michael Sage and Booker Morey, regarding working together to sell, promote and

14 extend Leaf Lines and Sage Designs." Under that agreement, which "covers September 1995,"

15 Mr. Sage displayed and sold Leaf Lines products alongside his own Sage Designs products at the

16 September 1995 Mountain View crafts show. The September 1995 agreement also recited that

17 the parties' "longer term intention" was to "find a way to work together in a partnership or other

18 arrangement to grow the businesses, and for Michael to assist Booker with the intention of

19 earning an equity position in Leaf Lines. How this is to be done isn't yet known, nor is it a

20 commitment by either Michael or Booker, but it forms the basis or the consideration of efforts

21 beyond representation by Michael at shows as a consignment retailer."

22      20.   After September 1995 Mr. Sage continued to promote and sell Leaf Lines products

23 on a consignment basis.

24      21.   In approximately October 1997, Mr. Sage suggested to Mr. Morey that Leaf Lines

25 expand its product line to include larger shadowboxes (24" x 36"). Mr. Morey was not interested,

26 but agreed that Mr. Sage could sell such larger shadowboxes under the following arrangement:

27 Mr. Sage assembled frames, empty shadowboxes, mats and glass for such products. Mr. Morey

28 arranged the layout of the branches and installed the etched leaves in the shadowboxes. Mr. Sage

---

1  then sold the finished 24" x 36" Leaf Lines shadowboxes pieces on behalf of Leaf Lines.

2          22.   In June 1998, Mr. Morey began training Mr. Sage to make the leaf arrangements in

3  the Leaf Lines Small Shadowbox Designs. Leaf Lines provided to Mr. Sage all the materials for

4  making the arrangements: the colored or natural etched leaves, the birch twigs used for mounting

5  the leaves, the specially designed shadowboxes custom-made for Leaf Lines to Mr. Morey's

6  specifications, the frames, mats and adhesive. Under Mr. Morey's direction, Mr. Sage would

7  choose the three leaves from the same species of tree, cut twigs to fit the shadowbox, and glue

8  the three leaves on the twigs to fit in the mat opening per Mr. Morey's instructions regarding

9  arrangements for aesthetic effect and dimensionality. Mr. Sage's assembly work assignments for

10 Leaf Lines were no different than some of Leaf Lines' full-time employees. Nearly always, Mr.

11 Sage would leave the mounted arrangements for Leaf Lines to "finish." "Finishing" would

12 include removing dust from the velveteen lined shadowbox, cleaning the glass, assembling the

13 glass, frame, mat and shadowbox, securing the shadowbox to frame, labeling the final piece, and

14 bagging and inventorying the piece for pick-up by Mr. Sage for the next show. Mr. Sage did not

15 participate in drying and pressing the leaves, the proprietary etching process, or bleaching and

16 airbrushing the colors into the leaves. Mr. Sage had access and knowledge, with Mr. Morey's

17 permission, to see and learn all the operations of the Leaf Lines business with the exception of

18 the Leaf Lines proprietary etching process.

19         23.   Mr. Sage did not purchase any materials that were included in products comprising

20 the Small Leaf Lines Shadowbox Designs. Leaf Lines paid Mr. Sage for his assembly work even

21 though the final pieces were consigned to Mr. Sage and Mr. Sage had no payment obligations

22 until the pieces were sold. Mr. Sage was also paid, per leaf, to harvest suitable leaves per Leaf

23 Lines' specifications for future use. Mr. Sage was also paid a "finder's fee" as a sales

24 representative for providing leads which Leaf Lines developed into new customers, in the amount

25 of 10% of new sales to such customers for the first year.

26         24.   In approximately March 1999, the parties began discussing the possibility that Mr.

27 Sage might eventually buy the Leaf Lines business. These discussions have continued on and off

28 to date.

1    25.   Mr. Sage continued to sell Leaf Lines products, including Leaf Lines Small

2    Shadowbox Designs assembled by Mr. Sage and finished by Leaf Lines, at public arts festivals

3    on a consignment basis. However, Mr. Sage refused to attend wholesale trade shows which could

4    result in new retailers or galleries for Leaf Lines, even when Mr. Morey offered him payment to

5    do so. Mr. Sage stated he refused to do so because obtaining new retailer customers for Leaf

6    Lines could result in making the Leaf Lines business too valuable for him to be able to purchase.

7    26.   On October 24, 2001, Defendants Michael Sage and Susan Gilmour Sage, dba Sage

8    Designs, signed an agreement pursuant to which they (a) confirmed that they did not know the

9    Leaf Lines proprietary etching process, and they would not make an effort to learn the process

10   except from Mr. Morey or others with his permission; (b) agreed that they would not make or sell

11   products related to etched leaves except those made by direct permission of Leaf Lines, ( c)

12   agreed that such etched leaves products sold by Sage Designs would not be represented as

13   exclusively Sage Designs products, and (d) agreed that Leaf Lines trademarks would not be

14   obscured on such products  (the "2001 Agreement"). These provisions were to be effective at

15   least until the Leaf Lines business was sold to Sage Designs.

16   27.   In September 2002, the parties agreed to change the arrangement under which Sage

17   Designs would make and/or sell Leaf Lines products, from consignment to wholesale purchase of

18   products, net 30. Under this new arrangement, Sage Designs was authorized to increase the

19   actual retail price at his discretion, and to retain all profits from such increases. The new

20   arrangement went into effect in October 2002. Leaf Lines continued to finish most of the Leaf

21   Lines products assembled and sold by Sage Designs.

22   28.   In December 2003, the Sages moved to Vancouver. Thereafter Leaf Lines assembled

23   and finished all Leaf Lines products to be sold by Sage Designs. Mr. Morey expressed concerns

24   regarding delayed payments for Sage's wholesale orders. Mr. Sage expressed concerns about his

25   cash flow.

26   29.   In October 2004, Mr. Sage purchased from Leaf Lines loose etched leaves for use in

27   assembling large 36" x 48" and 24" x 36" Leaf Lines shadowboxes in Vancouver. In February

28   2005, Mr. Sage made his last purchase of genuine Leaf Lines products, namely, fourteen 11" x

14" and forty-two 8" x 10" products comprising Leaf Lines Small Shadowbox Designs.

30.   In July 2005, Defendants demanded that Mr. Morey name a price for selling the Leaf Lines business to them. Thereafter the parties' ongoing discussions regarding the purchase price and financing for the proposed sale became acrimonious. Mr. Sage advocated a greatly reduced price to be paid over time, in consideration of his alleged contributions to growing the Leaf Lines business. Mr. Morey required a purchase price closer to actual value of the business with a discount based on generally accepted practice, and full payment up front. Mr. Sage continued to negotiate for his purchase of the Leaf Lines business at least through August 22, 2005, when Mr. Sage reiterated his proposed terms. On May 2, 2006, Plaintiffs, through letter from their counsel, suspended such discussions pending resolution of Plaintiffs' infringement claims (as set forth more fully below).

31.   All products comprising the Leaf Lines Small Shadowbox Designs sold and/or made by Sage under Leaf Lines' authorization were created and assembled in compliance with Plaintiffs' instructions and thereby duplicated the selection, arrangement and co-ordination comprising Plaintiffs' pre-existing Leaf Lines Small Shadowbox Designs. Sage did not make significant choices regarding the selection, arrangement, coloration, mounting materials or frames comprising these product designs.

32.   Throughout the time that Mr. Sage made and sold Leaf Lines products under Leaf Lines' authorization, Mr. Morey had expressed concerns about the poor quality of Leaf Lines products made by Mr. Sage. As a result, Mr. Sage made Leaf Lines products solely for his own inventory.

33.   From September 1995 when Mr. Sage first began working for Leaf Lines, through at least May 2, 2006 when Plaintiffs sent their first demand letter to Defendants, Mr. Sage worked for Leaf Lines as a sales agent for Leaf Lines products, and at all times Mr. Sage was fully compensated for his work as an independent contractor, including collecting leaves, assembling arrangements, carpentry work to the inside of Plaintiffs' building, and building the larger shadowboxes, on terms mutually agreed to by the parties. Mr. Sage was given, rent-free, an office/workroom/salesroom on Leaf Lines' premises. The parties intended that all work done on

behalf of Plaintiffs by Mr. Sage inured to the benefit of Plaintiffs. The parties did not conduct themselves as co-owners of the Leaf Lines business. Mr. Sage did not receive any share of profits or gross returns from the Leaf Lines business.

34.   Plaintiffs have never disclosed the Leaf Lines proprietary leaf etching process to Defendants, nor authorized any of Plaintiffs' employees or agents to do so. Plaintiffs' proprietary leaf etching process was performed in a separate location to which Sage was not authorized to have access.

### C.    Defendants' Infringing Conduct

35.   Upon information and belief, at least as early as June 2005, Defendants Michael Sage and Susan Gilmour Sage, dba Sage Designs, were making and selling products comprising nearly identical copies of Leaf Lines Small Shadowbox Designs ("Sage Design Knockoffs"), as well as genuine Leaf Lines products with the Leaf Lines labels removed, at public arts festivals and online under the "Sage Designs" trade name and mark, and the slogan "The Fine Art of Phantom Leaves" (collectively, the "Sage Marks"). True and correct examples of the Sage Design Knockoffs comprise Exhibit B.

36.   Upon information and belief, at least as early as June 2005, Defendants misrepresented to their customers at trade shows and public arts festivals that Mr. Sage was aware of and even participated in developing the Leaf Lines proprietary etching process.

37.   Upon information and belief, in June 2005 Defendants, together with several other business partners, opened the Gilbert District Gallery in Seaside, Oregon. Soon thereafter the Gilbert District Gallery began displaying and offering for sale Sage Designs Knockoffs under the Sage Designs Marks.

38.   At least through May 2006, on the Sage Designs website, Mr. Sage misrepresented the nature of his prior "symbiotic relationship" with Plaintiffs to falsely suggest that his products utilized the same etching process and overall product quality as Leaf Lines products. The site also offered preferential credit terms to galleries presently carrying Leaf Lines products.

39.   At least through May 2006, on the Sage Designs website, the "Guest Book" page displayed quotes of endorsement and praise from some purported customers of Sage Designs

1   products who were actually talking about genuine Leaf Lines products.

2       40.   On May 2, 2006, Plaintiffs, through counsel, sent a letter to Defendants, which, *inter*

3   *alia*, demanded that Defendants immediately remove and discontinue the misrepresentations

4   described above and that appropriate additional steps be taken to redress the harm to Plaintiffs

5   resulting from their display and distribution. This letter also stated that Plaintiffs would no longer

6   negotiate for sale of the business to Sage, and offered alternative proposals for allowing

7   Defendants to continue making and selling etched leaves products.

8       41.   By letter dated September 6, 2006, and subsequent correspondence between the

9   parties, Defendants refused Plaintiffs' business proposals, and Plaintiffs demanded that

10  Defendants cease all display and sale of the Sage Designs Knockoffs.

11      42.   At least as of May 2006 and continuing to date, Defendants have made false

12  statements online and in Sage Designs promotional materials suggesting that Leaf Lines

13  proprietary process is actually an ancient process, and that Defendants' products utilize the same

14  process. These include misrepresentations that an "ancient art of skeletonizing leaves" was

15  "rediscovered" by Mr. Morey; that "Booker introduced me to the ancient art of skeletonizing

16  leaves"; and that "the Art of skeletonizing leaves has been around for hundreds of years and was

17  regularly practiced in the Victorian era." Defendants' websites have also posted numerous third-

18  party materials and references to third party sites discussing various leaf etching processes,

19  creating the false implication that the Leaf Lines process and/or its products are not unique.

20      43.   Upon information and belief, to date, Defendants have continued to misrepresent at

21  trade shows, pubic arts festivals, online and in Sage Designs promotional materials that Mr. Sage

22  and Mr. Morey "collaborated to design, produce and market a line of shadow boxes that

23  contained skeletons of real leaves"; and that Mr. Sage "co-developed" the Leaf Lines Small

24  Shadowbox Designs.

25      44.   Upon information and belief, to date, Defendants have continued to make false

26  statements at trade shows, pubic arts festivals, online and in Sage Designs promotional materials

27  about the nature of Mr. Sage's prior working relationship with Mr. Morey. These include

28  misrepresentations that Mr. Sage was "offered a partnership," that Mr. Morey "partnered" with

Mr. Sage; and that Mr. Morey asked Mr. Sage to help him develop a craft business "in exchange for 'stock' in the future success." Mr. Sage has never been a partner in the Leaf Lines business and has never been promised "stock" in the business.

45.   Upon information and belief, to date, Defendants have continued to make statements at trade shows, pubic arts festivals, online and in Sage Designs promotional materials which suggest that Sage Designs has been and is the only source of etched leaf shadowbox products. For example, in a postcard sent to galleries and retailers earlier this year, Mr. Sage touts his products and invites the recipients to visit his booth at Wholesalecrafts.com's annual national ACRE (American Craft Retailers Expo) arts and crafts show in Las Vegas in May 2007, stating "Perhaps you are already familiar with my very popular shadow box line. I have made major improvements that have dramatically increased their salability [sic], while maintaining costs."

46.   Since March 2006, Plaintiff Leaf Lines, LLC has been a listed vendor on the Wholesalecrafts.com website.

47.   Upon information and belief, Defendants' promotional materials as described above have been sent by email and regular mail to Leaf Lines customers and potential customers nationwide, including within the Northern District of California.

48.   Upon information and belief, Defendants' websites operating under the Sage Designs Marks are interactive sites through which Defendants, at all times relevant to this action actively display and solicit sales of Sage Design products, including the Sage Design Knockoffs, as well as the misrepresentations described above, to online viewers nationwide, including in the Northern District of California. Defendants also actively promote Sage Design products, including the Sage Design Knockoffs, to potential customers and Plaintiffs' current customers nationwide, including within the Northern District of California, through third-party websites such as <www.wholesalecrafts.com>.

49.  Upon information and belief, to date Defendants continue to display and offer for sale Sage Design Knockoffs at trade shows and public arts festivals and to misrepresent to the attendees and trade show and festival organizers that Defendants created and own rights in the Leaf Lines Small Shadowbox Designs, including without limitation at Wholesalecrafts.com's

1  annual national ACRE (American Craft Retailers Expo) arts and crafts show in Las Vegas in

2  May 2007.

3      50.   Defendants have represented on its listing on the Wholesalecrafts.com site that Sage

4  Designs has over fifty retailer customers for its products, including the Sage Designs Knockoffs.

5      51.   On information and belief, at least as of June 2006, the Gilbert District Gallery

6  continued to display and offer for sale Sage Designs Knockoffs.

7      52.   Plaintiff has received and continues to receive comments and inquiries from Leaf

8  Lines' wholesale customers and their potential retail customers about an association between

9  Sage Designs and Leaf Lines, and which demonstrate confusion over the source of Leaf Lines

10 products, including Leaf Lines Small Shadowbox Designs, including mistaken assumptions that

11 Sage Designs is the originator and only source of such products.

12     53.   Upon information and belief, Defendants plan to continue their unauthorized

13 copying and use of the Leaf Line Shadowbox Designs, and unless restrained by this court, will

14 continue to unfairly compete with Plaintiffs by marketing and selling the Sage Design Knockoffs.

15     54.   Upon information and belief, Defendants plan to continue their misrepresentations

16 regarding the Leaf Lines proprietary process, the nature of the prior relationship between the

17 parties, the authorship of the Leaf Lines Small Shadowbox Designs, and the nature of the Sage

18 Design Knockoffs, and unless restrained by this court, will continue to unfairly compete with and

19 disparage Plaintiffs by making such misrepresentations.

20                        **FIRST CLAIM FOR RELIEF**

21        **Federal Copyright Infringement Under 17 U.S.C. §101 et seq.**

22     55.   Plaintiffs restate and reaver the allegations of paragraphs 1 through 54, inclusive.

23     56.   Plaintiff Leaf Lines, LLC owns valid copyrights in artworks featuring the Leaf Lines

24 Small Shadowbox Designs (the "Copyrighted Works"), by assignment from Plaintiff Booker

25 Morey. At all times relevant hereto, Plaintiffs have been and still are the exclusive owners, with

26 the sole authority to exploit the Copyrighted Works, and as such Plaintiffs have standing to assert

27 claims of copyright infringement.

28     57.   At all times relevant hereto, all or substantially all copies of Leaf Lines' Copyrighted

Works made by Plaintiffs or under Plaintiffs' authority or license in the United States and elsewhere have been made in strict conformity with the Copyright Act of the United States and all other laws governing copyright in the areas where the items have been published.

58.  At all times relevant hereto, all or substantially all of Plaintiffs' genuine materials bearing the Copyrighted Works have been marked with copyright notices claiming copyright in Plaintiffs' name.

59.  Plaintiffs' Copyrighted Works constitute original artwork created by Plaintiff Booker Morey.

60.  Plaintiffs' Copyrighted Works represent copyrightable subject matter under the laws of the United States.

61.  Plaintiffs  have not conveyed any copyright interest in the Copyrighted Works to Defendants.

62.  Defendants had access to Plaintiffs' Copyrighted Works through Mr. Sage's prior working relationship with Plaintiffs. Plaintiffs' Copyrighted Works have been extensively published and displayed worldwide, including on Plaintiffs' promotional publications, Plaintiffs' websites, third party websites, and trade shows.

63.  The products comprising Defendants' Sage Design Knockoffs are identical or strikingly similar copies of the Leaf Lines Small Shadowbox Designs, and their creation, display, offering for distribution, distribution and sale by Defendants constitute willful and unauthorized distribution, copying and misappropriation of substantial or entire portions of the artwork contained in, and original to, Plaintiffs' Copyrighted Works, including without limitation the Copyrighted Works covered by the U.S. Copyright registrations set forth in Exhibit A.

64.  Upon information and belief, Defendants intentionally and willfully created, imported, marketed, sold, and/or distributed materials bearing copies of Plaintiffs' Copyrighted Works, without authority of Plaintiffs or their agents, including display of images comprising the Sage Design Knockoffs on their own and third-party websites.

65.  Defendants and each of them have induced, caused or materially contributed to the infringing acts alleged herein and are each liable to Plaintiffs for direct, contributory or vicarious

1  copyright infringement, or inducing the same.

2      66.  Defendants and each of them have benefitted economically in the form of continued

3  and increased revenues and enhanced reputation from the promotion and sale of the

4  infringements alleged herein.

5      67.  By their wrongful acts, Defendants have, and unless enjoined by this Court, will

6  continue to cause serious and irreparable harm to Plaintiffs. Plaintiffs have no adequate remedy

7  at law.

8      68.  As a direct and proximate result thereof, Plaintiffs have been and continue to be

9  damaged in an amount to be proven at trial.

10                    **SECOND CLAIM FOR RELIEF**

11     **Federal Unfair Competition, Common Law Trade Dress Infringement**

12                      **Under 15 U.S.C. § 1125(a)**

13     69.  Plaintiffs restate and reaver the allegations of Paragraphs 1 through 68, inclusive.

14     70.  Plaintiffs' common law trade dress, namely, the distinctive expression comprising

15  the Leaf Lines Small Shadowbox Designs (the "Leaf Lines Trade Dress"), is inherently

16  distinctive. Moreover, as described above, the Leaf Lines Trade Dress has been extensively

17  used, advertised, and promoted through the United States, and the world in connection with

18  Plaintiffs' products.

19     71.  As a result of Plaintiffs' use, advertisement, and promotion of the Leaf Lines Trade

20  Dress, the Leaf Lines Trade Dress has become well and favorably known throughout the United

21  States and world as identifying Plaintiffs and their products. Plaintiffs have developed

22  exceedingly valuable goodwill with respect to the Leaf Lines Trade Dress.

23     72.  Defendants have created, imported, advertised, promoted, displayed, offered for sale,

24  and/or sold poor quality works comprising identical, or nearly identical copies of the Leaf Lines

25  Trade Dress (the "Sage Designs Knockoffs").

26     73.  Defendants' display of the Sage Designs Knockoffs is likely to cause members of the

27  relevant public and trade to believe that the products offered by Defendants are provided by or in

28  affiliation with or under the sponsorship or approval of Plaintiffs, in light of the confusing

1   similarity between the Sage Designs Knockoffs and Plaintiffs' genuine Leaf Lines Trade Dress.

2       74.   Defendants selected, adopted and/or used the Sage Designs Knockoffs with

3   knowledge of the Leaf Lines Trade Dress, and the valuable goodwill and business reputation

4   associated therewith and with willful intent to confuse, mislead, and deceive the public into

5   believing Defendants' products emanate from Plaintiffs or are in some manner associated with,

6   approved or endorsed by Plaintiffs.

7       75.   Upon information and belief, Defendants' acts complained of herein occurred after

8   the Leaf Line Shadowbox Designs became distinctive of source.

9       76.   Defendants' offering of the poor quality products utilizing the Leaf Lines Trade

10  Dress threatens to undermine or even destroy the legitimate market for genuine Leaf Lines

11  products.

12      77.   Upon information and belief, unless restrained by this Court, Defendants will

13  continue to infringe Plaintiffs' genuine Leaf Lines Trade Dress by its use of the above-identified

14  Sage Designs Knockoffs.

15      78.   As set forth more fully above, Defendants have made several false and misleading

16  descriptions of facts in their commercial advertising and promotions, which misrepresent the

17  nature, characteristics, qualities and origins of Leaf Lines products and the Leaf Lines Small

18  Shadowbox Designs, as well as Defendants' own products comprising Sage Designs Knockoffs

19  (the "False Advertising Misrepresentations").

20      79.   On information and belief, Defendants made the False Advertising

21  Misrepresentations with willful intent to confuse, mislead, and deceive the public.

22      80.   Upon information and belief, unless restrained by this Court, Defendants will

23  continue make false the False Advertising Misrepresentations.

24      81.   Defendants' wrongful acts will destroy the ability of the Leaf Lines Small

25  Shadowbox Designs to serve as an identification of a single source, will dilute the Leaf Lines

26  Small Shadowbox Designs by lessening their capacity to identify and distinguish services

27  emanating from Plaintiffs from other goods and services and will rob Plaintiffs of the value

28  thereof.

---

82.  Defendants and each of them have induced, caused or materially contributed to the infringing acts and unlawful conduct alleged herein and are each liable to Plaintiffs for direct, contributory or vicarious trade dress infringement and false advertising, or inducing the same.

83.  Defendants and each of them have benefitted economically in the form of continued and increased revenues and enhanced reputation from promotion of the Sage Designs Knockoffs.

84.  By their wrongful acts, Defendants, unless restrained by this Court, will cause serious and irreparable harm to Plaintiffs.  Plaintiffs have no adequate remedy at law.

85.  As a direct and proximate result thereof, Plaintiffs have been and continue to be damaged in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**

**Unfair Competition Under Cal. Bus. & Prof. Code § 17200**

86.  Plaintiffs restate and reaver the allegations of paragraphs 1 through 85, inclusive.

87.  Defendants' above-averred actions constitute unlawful, unfair, and fraudulent business practices and unfair, deceptive, misleading, and false advertising in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

88.  By their wrongful acts, Defendants have, and unless enjoined by this Court, will continue to cause serious and irreparable harm to Plaintiffs. Plaintiffs have no adequate remedy at law.

89.  As a direct and proximate result thereof, Plaintiffs have been and continue to be damaged in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**Breach of Contract**

90.  Plaintiffs restate and reaver the allegations of paragraphs 1 through 89, inclusive.

91.  The provisions of the 2001 Agreement under which Defendants (a) confirmed that they did not know the Leaf Lines proprietary etching process, and they would not make an effort to learn the process except from Mr. Morey or others with his permission; (b) agreed that they would not make or sell products related to etched leaves except those made by direct permission of Leaf Lines, ( c) agreed that such etched leaves products sold by Sage Designs would not be

represented as exclusively Sage Designs products, and (d) agreed that Leaf Lines trademarks would not be obscured on such products, were effective at least until negotiations for sale of the Leaf Lines business to Sage Designs broke down in May 2006.

92.   Plaintiffs have performed all terms, conditions, and obligations required of Plaintiffs under the 2001 Agreement.

93.   As set forth above, at least as of June 2005 and continuing through at least May 2006, Defendants have (a) represented to the public that Mr. Sage was aware of and even co-developed the Leaf Lines proprietary process; (b) made and sold products related to etched leaves without authorization from Plaintiffs;  ( c) represented that Leaf Lines products sold by Defendants were exclusively Sage Designs products, and (d) sold Leaf Lines products on which the Leaf Lines trademarks were obscured and/or removed. Each of these actions constitutes a material breach of the 2001 Agreement by Defendants.

94.   By their wrongful acts, Defendants have, and unless enjoined by this Court, will continue to cause serious and irreparable harm to Plaintiffs. Plaintiffs have no adequate remedy at law.

95.   As a direct and proximate result thereof, Plaintiffs have been and continue to be damaged in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

96.   Plaintiffs restate and reaver the allegations of paragraphs 1 through 95, inclusive.

97.   In his position as an independent contractor sales agent for Plaintiffs,  Mr. Sage was entrusted with duties directly affecting the functioning and success of Plaintiffs' Leaf Lines business, including promoting and selling Leaf Lines products. Thus Mr. Sage was in a special relationship with Plaintiffs giving rise to a fiduciary duty owed to Plaintiffs at least through May 2, 2006.

98.   Defendants breached their fiduciary duty to Plaintiffs by engaging in activities which constituted conflicts of interest and self-dealing, including the establishment of a directly competing business in Plaintiffs' established markets, and acts of disparagement and

1  misrepresentations regarding Plaintiffs and Plaintiffs' products as set forth above.

2      99.   Defendants' breach of fiduciary duty was oppressive and malicious, and in conscious

3  disregard of Plaintiffs' rights.

4      100.   By their wrongful acts, Defendants have, and unless enjoined by this Court, will

5  continue to cause serious and irreparable harm to Plaintiffs. Plaintiffs have no adequate remedy

6  at law.

7      101.   As a direct and proximate result thereof, Plaintiffs have been and continue to be

8  damaged in an amount to be proven at trial.

9                          **SIXTH CLAIM FOR RELIEF**

10                **Misrepresentation Under DMCA, 17 U.S.C. § 512(f)**

11      102.   Plaintiffs restate and reaver the allegations of paragraphs 1 through 101, inclusive.

12      103.   Defendants have caused images of the infringing Sage Designs Knockoffs to be

13  displayed on several websites, including <www.acrelasvegas.com> and

14  <www.wholesalecrafts.com>.

15      104.   In April 2007, Plaintiffs sent notices under the DMCA, 17 U.S.C. § 512, to third

16  parties who, on information and belief, have caused or contributed to the display and sale of the

17  infringing Sage Designs Knockoffs. One such notice was sent to Wholesalecrafts.com regarding

18  displays of infringing images on its websites <www.acrelasvegas.com> and

19  <www.wholesalecrafts.com>. Wholesalecrafts.com eventually removed the infringing images

20  from its sites.

21      105.   On July 24, 2007,  Plaintiffs received notice from Wholesalecrafts.com that the

22  infringing images would be returned to its site based on a purported DMCA counter-notice

23  provided by Mr. Sage. The counter-notice by Mr. Sage (as forwarded to Plaintiffs by

24  Wholesalecrafts.com) states, under penalty of perjury, that the materials were removed as a result

25  of mistake or misidentification, and that "Mr. Morey and I (Michael Sage) have been

26  collaborative partners and I was the driving creative force in the relationship and own any

27  enforceable rights therein. The 'copyrights' by Mr. Morey having thus been falsely filed claiming

28  himself as sole author. I have contributed copyrightable elements to the product line which can

1  be corroborated"; and "Further, the inability to enforce these rights is well documented in the

2  ninth circuits [sic]. The courts have long since demonstrated their reluctance to grant broad

3  copyrights which give monopoly powers to individuals. Please see the following example:

4  SATAVA v. LOWRY, 323 F.3d 805 (9th Cir. 2003)."

5      106.   The statements referenced above in Sage's purported counter-notice are false and

6  constitute material misrepresentations. As set forth above, Mr. Sage did not collaborate on or

7  contribute copyrightable authorship to the Leaf Lines Small Shadowbox Designs replicated in the

8  Sage Designs Knockoffs.

9      107.   Mr. Sage knowingly made the false statements referenced above with willful intent

10  to mislead Wholesalecrafts.com and to cause the infringing materials to be re-posted.

11      108.   Defendants' counter-notice failed to include a statement that Defendants consent to

12  the jurisdiction of Federal District Court for the judicial district in which the address is located,

13  or that Defendants will accept service of process from Plaintiffs, in violation of 17 U.S.C. §

14  512(g)((3)(D).

15      109.   Defendants' above-averred actions constitute misrepresentation and perjury in

16  violation of 17 U.S.C. § 512(f).

17      110.   By their wrongful acts, Defendants have, and unless enjoined by this Court, will

18  continue to cause serious and irreparable harm to Plaintiffs. Plaintiffs have no adequate remedy

19  at law.

20      111.   As a direct and proximate result thereof, Plaintiffs have been and continue to be

21  damaged in an amount to be proven at trial.

22                      **SEVENTH CLAIM FOR RELIEF**

23              **Declaratory Judgment Under 28 U.S.C. § 2201**

24      112.   Plaintiffs restate and reaver the allegations of paragraphs 1 through 111, inclusive.

25      113.    As set forth above, Defendants claim that Mr. Sage created and owns copyright

26  interests in Leaf Lines Small Shadowbox Designs and that Plaintiffs' copyrights are

27  unenforceable against Defendants. Plaintiffs allege that Plaintiffs are the sole creator and owner

28  of valid and enforceable copyrights in the Leaf Lines Small Shadowbox Designs.

114.   Accordingly, a judiciable case or controversy exists between Plaintiffs and Defendants with respect to the validity and ownership of such copyrights.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.    Declaratory judgment that Plaintiffs are the sole author and copyright owner of the Leaf Lines Small Shadowbox Designs, that Plaintiffs' copyright registrations therefor are valid, and that Defendants have infringed Plaintiffs' copyrights in the Leaf Lines Shadowbox Designs.

2.    That Defendants, Defendants' agents, employees, and licensees, and all persons or entities in active concert or participation with any of them who receive notice of the Court's Order, be preliminarily and permanently enjoined from:

A.    Creating, manufacturing, causing to be created or manufactured, importing, displaying, marketing, promoting, advertising, distributing, selling, and/or otherwise disposing of any materials that incorporate, reflect, or contain any unauthorized use of the Leaf Lines Small Shadowbox Designs, including without limitation the Sage Designs Knockoffs (collectively "Infringing Materials"), and/or infringing Plaintiffs' copyrights or trade dress therein in any manner;

B.    Otherwise infringing any of Plaintiffs' copyrights or trademarks;

C.    Making false or misleading descriptions of facts in their commercial advertising and promotions, which misrepresent the nature, characteristics, qualities and origins of Leaf Lines products and the Leaf Lines Small Shadowbox Designs, as well as Defendants' own products comprising Sage Designs Knockoffs, including without limitation any statements, suggestions or implications that (1) Defendants developed the Leaf Lines proprietary process, (2) Defendants' products utilize the Leaf Lines proprietary process, (3) Defendants contributed to or own any rights in, including without limitation copyright or trade dress, in the Leaf Lines Small Shadowbox Designs, (4) Defendants are the originators or only source of etched leaf products, or (5) Mr. Sage was a business "partner" in Leaf Lines, or that he was offered a partnership, or that Mr. Morey asked Mr. Sage to help him develop a craft business in exchange for stock in the future success.

D.    Otherwise competing unfairly with Plaintiffs.

3.     That Defendants, their agents, employees, and licensees, and all those acting under its direction and pursuant to its control, be directed to notify Wholesalecrafts.com, Gilbert District Gallery, and any other venue where the Infringing Materials have been displayed or offered for sale, (a) declaring that the Infringing Materials were displayed and distributed without authorization, and (b) requiring that display or offering for sale of Infringing Materials be immediately discontinued, and ( c) all materials comprising copies of such images be delivered up for destruction.

4.     That Defendants, their agents, employees, and licensees, and all those acting under its direction and pursuant to its control, be directed to deliver up for destruction all Infringing Materials, and other matter employed in the creation, distribution and sale of Infringing Materials.

5.     That Defendants be required to pay Plaintiffs:

A.     Any and all profits made by Defendants as a result of the aforesaid infringements, together with interest thereupon in an amount presently unknown;

B.     Plaintiffs' damages in an amount presently unknown but believed to be in excess of $50,000, together with interest;

C.     Disgorgement of Defendants' profits and/or unjust enrichment in an amount to be determined at trial:

D.     Three times the profits and damages pursuant to 15 U.S.C. § 1117(b); and

E.     Punitive damages in an amount to be determined at trial.

6.     That Defendants be required to pay Plaintiffs' costs of this action, together with Plaintiffs' reasonable attorneys' fees, under 15 U.S.C. §1117(a).

7.     That the Court award Plaintiffs such other and further relief as this Court shall deem just and proper.

OWEN, WICKERSHAM & ERICKSON, P.C.

Dated: December 21, 2007    By   /ljk/
Lawrence G. Townsend
Linda Joy Kattwinkel
Attorneys For Plaintiffs,
Leaf Lines LLC and Booker Morey

FIRST AMENDED COMPLAINT FOR FEDERAL COPYRIGHT INFRINGEMENT, ETC.   -21-

1

2                          **DEMAND FOR JURY TRIAL**

3          Plaintiffs hereby demand a jury trial of all issues in the above-captioned action which are

4    triable to a jury.

5                                           OWEN, WICKERSHAM & ERICKSON, P.C.

6
     Dated: December 21, 2007           By ___/ljk/_____
7                                               Lawrence G. Townsend
                                                Linda Joy Kattwinkel
8                                               Attorneys For Plaintiffs,
                                                Leaf Lines LLC and Booker Morey
9

10

11            **CERTIFICATION RE INTERESTED PARTIES OR PERSONS**

12         Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

13   named parties, there is no such interest to report.

14
                                            OWEN, WICKERSHAM & ERICKSON, P.C.
15

16   Dated: December 21, 2007           By ___/ljk/_____
                                                Lawrence G. Townsend
17                                              Linda Joy Kattwinkel
                                                Attorneys For Plaintiffs,
18                                              Leaf Lines LLC and Booker Morey

19

20   S:\1Clients\LEAFL\70001\1st Am Complaint 12-21-07.wpd

21

22

23

24

25

26

27

28

---
FIRST AMENDED COMPLAINT FOR FEDERAL COPYRIGHT INFRINGEMENT, ETC.          -22-